**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENDRIA STEWART, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 23-cv-3306 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| INTERLAND, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION AND ORDER

Truck drivers Kendria Stewart and Sherdell Mallett hauled freight for Interland, Inc., an aptly named interstate-trucking company.  Interland paid Stewart and Mallett through their corporate entities, MMS Truckline LLC and Grand Mallett Corporation.  Stewart and Mallett believe that Interland shorted their paychecks by making deductions that were not disclosed in the lease.

Stewart, Mallett, and their two companies filed suit against Interland on behalf of themselves and a putative class of truck drivers.  Stewart and Mallett brought state-law claims under the Illinois Wage Payment and Collection Act.  MMS Truckline and Grand Mallett brought federal claims under the Truth in Leasing Act.

Plaintiffs moved for class certification.  For the reasons stated below, the motion for class certification is granted.

### Background

Kendria Stewart and Sherdell Mallett drive trucks.  *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶¶ 53–54 (Dckt. No. 57).

Stewart and Mallett each own a business. Stewart owns MMS Truckline LLC. *See* Def.'s Statement of Facts, at ¶ 7 (Dckt. No. 46-2). Mallett owns Grand Mallett Corporation. *Id.* at ¶ 10.

In 2022, Stewart and Mallett started going the distance for Interland, an interstate-trucking company. *Id.* at ¶¶ 1, 8, 11.

Interland is a motor carrier. *Id.* at ¶ 1. The federal government regulates motor carriers under the Truth in Leasing Act. *Id.* The regulations require that carriers and drivers memorialize the terms of their relationship in a lease agreement. *See* 49 C.F.R. § 376.11(a) ("There shall be a written lease granting the use of the equipment[.]"); Pls.' Resp. to Def.'s Statement of Facts, at ¶ 58 (Dckt. No. 57).

In a nutshell, the federal regulations try to get the carrier and the driver on the same page, literally and figuratively. For example, the lease must "clearly state[]" how much the carrier will pay for the driver's "equipment" and "services." *See* 49 C.F.R. § 376.12(d). The lease also must list things that the carrier will "deduct[]" from the driver's "compensation." *See* 49 C.F.R. § 376.12(h).

Similarly, the Illinois Wage Protection Collection Act prohibits employers from making deductions from wages without the employee's written consent. *See* 820 ILCS 115/9. For example, a carrier can't dock a driver's paycheck for gas money, unless the lease put the charge-back deduction on the table.

Interland required its drivers to have their own corporations. *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 4 (Dckt. No. 57). Sometimes drivers do not already have their own corporations. In that situation, Interland pays the fees to set up the new corporations, and later

2

deducts the fees from the drivers' pay.  *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 67 (Dckt. No. 60).

Stewart and Mallett signed "Lease Agreement[s]" with Interland "under their corporate entities."  *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶¶ 8, 11 (Dckt. No. 57).  In other words, Interland signed an agreement with MMS Truckline (Stewart's company), and signed a separate agreement with Grand Mallett (Mallett's company).  *Id.*

Under the agreements, the corporate entities needed to maintain a $1,500.00 escrow fund with Interland.  *Id.* ¶ 14.  The agreements authorized Interland to deduct $150.00 per week until the $1,500.00 escrow fund was reached.  *Id.*

With contracts in hand, Stewart and Mallett got behind the wheel and hit the open road.  Stewart didn't stick around for long.  Stewart drove for Interland for only two weeks in the latter half of July 2022.  *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 53 (Dckt. No. 57).

Mallett kept trucking longer.  He drove for about a year, from March 2022 to April 2023.  *Id.* at ¶ 54.

Interland made deductions from their pay.  Three types of deductions are at issue for Stewart.  One type of deduction is at issue for Mallett.

Interland deducted $150 from Stewart's pay for an orientation fee.  *See* Stewart Statement (Dckt. No. 46-12).  Interland also deducted $80 from Stewart's pay for drug testing.  *Id.*  Finally, Interland deducted $389.59 from her pay for travel expenses, including $30 for luggage, $241.60 for a flight, and $117.99 for "Lyft/Uber."  *Id.*; *see also* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶¶ 63–64 (Dckt. No. 60).

Interland deducted $150 from Mallett's pay for a corporation fee.  *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 66 (Dckt. No. 60).

3

Stewart and Mallett weren't happy with the deductions. They also believed that the company shorted them on the interest for the money in escrow, too.

Stewart, Mallett, and their two companies responded by filing a putative class action against Interland. The complaint brings two counts.

The two companies brought the first claim. MMS Truckline and Grand Mallett allege that Interland violated the regulations under the Truth in Leasing Act. They claim that Interland made deductions for expenses that were not disclosed in the leases. They also claim that Interland failed to pay interest on the escrow money. *See* Second Am. Cplt., at ¶¶ 61–66 (Dckt. No. 18).

The two individuals brought the second claim. Stewart and Mallett bring claims under the Illinois Wage Payment and Collection Act. *Id.* at ¶¶ 67–74.

Interland moved for summary judgment. After reading the briefs, this Court had a few questions about the deductions and the disclosures. So it issued an order and directed the parties to provide some answers. *See* 2/25/25 Order (Dckt. No. 63). The parties complied, and provided helpful information. *See* Pls.' Suppl. Statement (Dckt. No. 64); Def.'s Suppl. Statement (Dckt. No. 65).

The parties confirmed that Interland made deductions from Stewart's pay for orientation fees, travel expenses, and drug-testing fees. The company did not make those deductions from Mallett's pay, because he worked longer than three months.[1] *See* Pls.' Suppl. Statement, at 2 (Dckt. No. 65) ("Interland did not deduct money from Mallett's pay for orientation fee, travel

---

[1] Interland has a policy of making certain deductions when a driver works for less than three months. And that's what happened here. Again, Stewart drove for only two weeks, and Mallett drove for roughly one year. Interland deducted an orientation fee, travel expenses, and drug-testing expenses from Stewart's pay, because Stewart worked less than three months. But Interland did not make those deductions from Mallett's pay because he drove more than three months.

4

expenses, or drug testing. It only deducted money from Stewarts' [sic] pay for those three items.").

The parties also confirmed that Interland made a deduction from Mallett's pay for a corporation fee. But Interland didn't make that deduction from Stewart's pay. *Id.* ("Interland only made the corporation fee deduction from Mallett's pay.").

So, Interland deducted orientation fees, travel expenses, and drug-testing fees from Stewart's pay, but not from Mallett's pay. And on the flipside, Interland deducted a corporation fee from Mallett's pay, but not Stewart's pay.

Plaintiffs moved for class certification under Rule 23(b)(3). *See generally* Mtn. for Class Certification (Dckt. No. 40).

### Legal Standard

"[A] proposed class under Rule 23(b) must meet the requirements of Rule 23(a) – numerosity, typicality, commonality, and adequacy of representation – and one of the alternatives listed in Rule 23(b)." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). When a plaintiff seeks certification for a damages class under Rule 23(b)(3), a court must find that common questions of law or fact "predominate" over individual questions, and that a class action is "superior" to other methods of adjudicating the case. *Id.*; *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020). The class must also meet Rule 23's "implicit requirement of 'ascertainability,'" meaning that the class is "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

The plaintiffs bear the burden of proving that their proposed class satisfies Rule 23 by a preponderance of the evidence. *See Howard*, 989 F.3d at 597. "Failure to meet any of the

Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

"Rule 23 is more than 'a mere pleading standard.'" *Howard*, 989 F.3d at 597 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A district court does not take the plaintiff's allegations at face value when evaluating the Rule 23 factors. *Id.* The court "must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

A court's analysis will "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 564 U.S. at 351. But "[t]he merits themselves are 'not on the table' at this early stage." *Howard*, 989 F.3d at 597 (quoting *Beaton*, 907 F.3d at 1025). Courts cannot "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## Analysis

Stewart, Mallett, and their companies seek to represent a putative class of drivers who hauled for Interstate during a three-year period. This Court will address the proposed class definition, before turning to the requirements under Rule 23(a) and Rule 23(b).

## I. The Class Definition

The first question is the class definition. *See Yata v. BDJ Trucking Co.*, 2020 WL 1062332, at *2 (N.D. Ill. 2020).

The Seventh Circuit has cautioned against defining a class based on vague or subjective criteria. *See Mullins*, 795 F.3d at 657. "[C]lass membership must be able to be determined based on objective criteria." *See* 7A Charles A. Wright & Arthur R. Miller, Federal Practice &

Procedure § 1760 (4th ed. 2024); *see also* Moore's Federal Practice § 23.21[3][a] (3d ed. 2024) (similar). A class definition must not depend on success on the merits, either. *See Mullins*, 795 F.3d at 657. A class definition must set clear boundaries so that the parties can tell who's in, and who's out.

Plaintiffs ask the Court to certify their TLA claims on behalf of a class defined as "all individuals or entities who performed work for Interland driving trucks from January 2020 to September 2023 and who entered into an equipment lease with Interland." *See* Pls.' Mem., at 15 (Dckt. No. 41). For their IWPCA claims, Plaintiffs ask the Court to certify a class defined as "all individuals who performed work for Interland as a truck driver from January 2020 to September 2023." *Id.*

Interland does not appear to challenge the proposed class definitions. *See generally* Def.'s Resp. (Dckt. No. 53). The proposed class definitions are similar to a class definition adopted by another court recently. *See Rivers v. Southway Carriers, Inc.*, 2024 WL 579734, at *2 (N.D. Ill. 2024) (certifying a class consisting of "[a]ll persons and entities that entered and operated under a 'Lease Agreements' or a 'Lease-to-Purchase' Agreement with Southway Carriers, Inc., during the applicable limitations periods for all Counts").

Even so, the Court spots a few issues, and has a few questions.

As framed, the class definition would include any and all drivers who hauled for Interland. That definition seems too broad.

After all, Stewart and Mallett aren't bringing claims simply because they drove for Interland. They're bringing claims because they drove for Interland, *and* because Interland made deductions from their pay that were not disclosed in the lease, *and* because Interland did not pay interest on the escrow money.

A driver who hauled for Interland wouldn't have a claim against Interland based on undisclosed deductions if Interland made no deductions for that driver, or if Interland only made deductions that it disclosed in the lease. Similarly, a driver wouldn't have a claim based on missing interest payments if Interland did, in fact, pay that driver interest on the money held in escrow.

True, maybe a tighter class definition would yield the same class as the current proposed class definition. That is, maybe Interland took undisclosed deductions from all drivers, and failed to pay interest to all drivers. If that's the case, then the revised class definition doesn't change much. But if it is possible that some drivers had no deductions, or did receive interest on the escrow money, then a sharper class definition might add some value.

As things stand, the proposed class definition seems like it could use some fine-tuning. The Court directs the parties to meet and confer about the proposed class definition, and file a joint statement on the issue within two weeks of entry of this opinion. The Court has "discretion to limit or redefine the class in an appropriate manner to bring the action within Rule 23." *See* 7A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1760 (4th ed. 2024).

In the meantime, the Court conditionally certifies a class of all individuals or entities who drove trucks for Interland from January 2020 to September 2023 under an equipment lease, and who (1) had deductions taken from their pay for orientation fees, travel expenses, drug-testing expenses, or corporation fees that were not disclosed in the lease, and/or who (2) did not receive interest on the money held in escrow.

The class will include two subclasses. The first subclass will include all such drivers who had deductions taken from their pay for orientation fees, travel expenses, drug-testing expenses,

8

and corporation fees that were not disclosed in the lease.  The second subclass will include all

such drivers who did not receive interest on the money held in escrow.

Again, maybe the parties can come up with a sharper class definition.  In the meantime,

the Court will await the feedback from the parties.

## II.     Rule 23(a)

The next set of requirements come from Rule 23(a).  Plaintiffs must show numerosity,

typicality, commonality, and adequacy of representation.

Those requirements don't pose any roadblocks here.  Interland concedes that Plaintiffs

have satisfied all of the requirements of Rule 23(a).

When deciding whether to certify a class, "a district court should begin by identifying the

elements of the plaintiff's various claims."  *See Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir.

2022).  After laying the groundwork, "the district court [can] decide which issues are common,

individual, and predominant."  *See Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir.

2021).

Here, Plaintiffs bring a federal claim under the Truth in Leasing Act.  *See* Pls.' Mem., at

7–8 (Dckt. No. 41).  The regulations require the disclosure of charge-backs, and also require the

payment of interest on money held in escrow.

Specifically, the regulations require that a lease "specify all items that may be initially

paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the

time of payment or settlement."  *See* 49 C.F.R. § 376.12(h).

A lease must specify "[t]he amount of any escrow fund . . . required to be paid by the

lessor to the authorized carrier or to a third party."  *See* 49 C.F.R. § 376.12(k)(5).  And "while

the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis." *See* 49 C.F.R. § 376.12(k)(5).

Plaintiffs also bring claims under the Illinois Wage Payment and Collection Act. *See* Pls.' Mem., at 8 (Dckt. No. 41). That statute prohibits "deductions by employers from wages or final compensation . . . unless such deductions are . . . made with the express written consent of the employee, given freely at the time the deduction was made." *See* 820 ILCS 115/9.

The statute broadly defines an "employee" as "any individual permitted to work by an employer in an occupation," subject to a three-part exception. *See* 820 ILCS 115/2. Those three parts are commonly referred to as the "ABC test," for reasons that don't jump off the page. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). Under that test, an individual is not an employee if he is free from control over his work, performs work outside the usual course of business, and is in an independently established business. *See* 820 ILCS 115/2.

With that background in mind, the Court will march through the requirements of Rule 23(a).

### A. Numerosity

Rule 23(a)'s first requirement is numerosity. Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1).

A plaintiff does not need to prove an exact number of class members, but "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) (citation omitted).

Plaintiffs seek to bring claims on behalf of themselves and all other truckers from 2020 to 2023. During that time period, hundreds of people drove trucks for Interland. *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 55 (Dckt. No. 57).

10

Interland does not challenge the numerosity requirement. *See generally* Def.'s Resp. (Dckt. No. 53). This Court assumes that hundreds of drivers will fall within the class definition as revised, too (and if not, the parties should say so).

The Court concludes that Plaintiffs have met their burden to demonstrate numerosity.

### B.      Commonality

Rule 23(a)'s second requirement is commonality. Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2).

The claims "must depend on a common contention that is capable of class-wide resolution." *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015) (citing *Wal-Mart*, 564 U.S. at 350). And class-wide resolution means that "determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart*, 564 U.S. at 350). "'A common nucleus of operative fact is usually enough to satisfy' this requirement." *See Rivers*, 2024 WL 579734, at *6 (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Plaintiffs say that the claims under the Truth in Leasing Act share common questions, including whether Interland charged drivers for deductions that were not disclosed in the lease, and whether Interland paid interest on the money in escrow. *See* Pls.' Mem., at 16 (Dckt. No. 41). Plaintiffs also contend that the claims under the Illinois statute have common questions, including whether Interland made deductions from the wages of drivers without their authorization, and whether the drivers were "employees" within the meaning of the IWPCA. *Id.* at 16–17.

Again, Interland does not challenge the commonality requirement. *See generally* Def.'s Resp. (Dckt. No. 53).

11

The question whether Interland violated the regulations under the Truth in Leasing Act is common to all members of the proposed class. All of Interland's drivers entered into "substantially the same Independent Contractor Lease Agreement." *See* Def.'s Statement of Facts, at ¶ 6 (Dckt. No. 46-2); *see also Rivers*, 2024 WL 579734, at *5 ("[T]he [TLA] claims are centered on the contents of identical or substantially similar Lease Agreements."). Like the defendant in a recent TLA case in this district, Interland "is alleged to have engaged in a uniform course of conduct" by withholding payments, withholding disclosures, and making deductions from compensation. *See Rivers*, 2024 WL 579734, at *5. So the claims "operate from a common nucleus of operative fact." *Id.*

The same conclusion applies to the claims under the state statute. The drivers signed substantially the same lease, so the putative class members share common questions about whether the company made improper deductions. Whether the drivers were employees within the meaning of the state statute is common to all class members, too, because they all had the same job. *See Costello*, 810 F.3d at 1059.

The Court concludes that Plaintiffs have demonstrated commonality.

## C.     Typicality

Rule 23(a)'s third requirement is typicality. Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3).

A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory. *See Rivers*, 2024 WL 579734, at *6 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). The typicality requirement "may be satisfied even if there are factual

distinctions between the claims of the named plaintiffs and those of other class members." *See Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Plaintiffs argue that their claims arise from Interland's standard practices. Interland made unauthorized wage deductions without disclosing them in the lease, and failed to pay interest on the money in escrow. *See* Pls.' Mem., at 19 (Dckt. No. 41).

Interland does not challenge the typicality requirement. *See generally* Def.'s Resp. (Dckt. No. 53).

The Court agrees that Plaintiffs have demonstrated typicality. Interland's "course of conduct covers both the Truth-in-Leasing and IWPCA claims, and the legal theories of the class members are uniform within each claim – they contend that [Interland]'s alleged common course of conduct violated the applicable law." *See Rivers*, 2024 WL 579734, at *6.

The Court concludes that Plaintiffs have met their burden to show typicality.

### D.     Adequacy of Representation

Rule 23(a)'s fourth and final requirement is adequacy of representation. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

"Th[e] adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citation omitted).

Stewart and Mallett "have allegedly suffered the very TLA harm they contend the whole class has suffered." *See Yata*, 2020 WL 1062332, at *5. There is no reason to think that their interests diverge from the interests of the putative class. And Plaintiffs' counsel signed a

13

declaration indicating that he is an experienced attorney in class-action litigation. *See generally* Wilmes Decl. (Dckt. No. 41-18).

Interland doesn't dispute the adequacy of representation. *See generally* Def.'s Resp. (Dckt. No. 53).

The Court concludes that Plaintiffs have met their burden and demonstrated the adequacy of representation.

## III.    Rule 23(b)

The next set of requirements comes from Rule 23(b)(3). Plaintiffs must show that common questions predominate over individual questions, and that a class action is superior to other methods of adjudicating the dispute.

Interland only disputes the issue of predominance.

### A.    Predominance

The first requirement under Rule 23(b)(3) is predominance. A plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." *See* Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815 (alterations in original) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)).

Plaintiffs argue that the question whether Interland violated the TLA regulations predominates over any individual questions. *See* Pls.' Mem., at 21 (Dckt. No. 41). After all, everyone signed basically the same lease. Simply put, Plaintiffs argue that "there are no individualized questions with respect to liability." *Id.*

Similarly, Plaintiffs argue that the facts needed to prove their IWPCA claim are common to all members of the class. Plaintiffs will need to prove that Interland's forms did not comply with the IWPCA's strict rules for deductions. *Id.* at 8, 22. In Plaintiff's view, the only individualized issue would be the calculation of damages. *Id.*

Interland argues that the putative class does not satisfy the predominance requirement. It doesn't argue that individualized questions will predominate on the issue of liability. Instead, Interland argues that individualized questions will predominate when it comes to damages.

That argument faces an uphill battle. "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (citing *Wal-Mart*, 564 U.S. at 362); *see also Arreola*, 546 F.3d at 794 ("[T]he need for individual damages determinations does not, in and of itself, require denial of [a] motion for certification."); *Mullins*, 795 F.3d at 671 ("It has long been recognized that the need for individual damages determinations . . . does not itself justify the denial of certification."); *Ross v. Gossett*, 33 F.4th 433, 441 (7th Cir. 2022) ("Even assuming a damages assessment would require individual evidence, however, the court did not abuse its discretion in determining that the common issues as to liability establish predominance."); *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ("[A]t the class certification stage, plaintiffs are not obligated to drill down and estimate each individual class member's damages.").

Additionally, if damages end up being too individualized to assess on a class-wide basis, the solution is to hold individual hearings – not deny class certification. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification."); *see also McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015) ("It is well established that, if a case

requires determinations of individual issues of causation and damages, a court may bifurcate the case into a liability phase and a damages phase.") (citation omitted).

Interland believes that this case is different because the calculation of damages will require "evidence unique to each class member." *See* Def.'s Resp., at 8 (Dckt. No. 53). Interland says that the "types of deductions made and the amount of any alleged underpayment varies significantly by driver." *Id.* at 10. And determining the amount of escrow interest due "first requires calculation of the average advance made to each individual lessor, which necessarily will vary between the putative class members." *Id.* at 8.

This Court isn't so sure. As Plaintiffs point out, the calculations shouldn't be that difficult.

The TLA claims involve improper deductions, and unpaid interest. For the improper deductions, someone simply has to identify the deductions, and put them into a spreadsheet. *See* Pls.' Reply, at 6 (Dckt. No. 61). Identifying the deductions might take a little time, but it shouldn't require a calculation.

Calculating the unpaid interest seems doable, too. The calculation is simple: "Principal x Interest Rate x Time = Interest." *Id.* at 3.

For the IWPCA claims, the parties can simply review payroll record spreadsheets and determine which deductions violated the IWPCA. *Id.* at 8.

Calculating damages for each class member may take some work, and it may raise some individualized questions. But they are far from insurmountable. They are not so tricky that the damages questions will make individualized questions the predominate issue in the case.

16

### B.    Superiority

The other requirement under Rule 23(b)(3) is superiority.  Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).

This requirement is satisfied if "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated."  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Plaintiffs argue that "[i]ndividual adjudication of the hundreds of class members' claims would burden the Court and the class members themselves."  *See* Pls.' Mem., at 23 (Dckt. No. 41).  That's because many of the claims "are worth less than $5,000," so the "costs of litigating the claims individually" would "quickly exceed the dollar value of the claims themselves."  *Id.* at 23–24.

Interland doesn't argue otherwise.  *See generally* Def.'s Resp. (Dckt. No. 53).

The Court agrees.  It would be burdensome, to say the least, to require each and every class member to file his or her own lawsuit in federal court to recover what Plaintiffs admit is a relatively small amount of money.  As the Seventh Circuit has noted, "[t]he smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment."  *See Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 675 (7th Cir. 2013).

The Court concludes that Plaintiffs have met their burden to show that a class action is superior to other methods of adjudicating their claims.

### Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification under Rule 23(b)(3) is conditionally granted, subject to finalizing the class definition with the parties.

17

Date:    March 7, 2025

Steven C. Seeger
United States District Judge