## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KENDRIA STEWART, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23-cv-3306 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| INTERLAND, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Truck drivers Kendria Stewart and Sherdell Mallett hauled freight for Interland, Inc., an aptly named interstate-trucking company. Stewart and Mallett believe that Interland shortchanged them. As they see things, Interland made deductions from their pay for expenses that were not disclosed in the lease. The company also failed to pay interest on money held in escrow.

Stewart and Mallett filed suit against Interland on behalf of themselves and their two businesses. Stewart owns MMS Truckline, LLC, and Mallett owns Grand Mallett Corporation. So four plaintiffs sit behind the wheel of this lawsuit. They seek to represent a putative class of drivers, too.

MMS Truckline and Grand Mallett brought claims under the federal Truth in Leasing Act ("TLA"). Stewart and Mallett brought state-law claims under the Illinois Wage Payment and Collection Act.

Interland moved for summary judgment on the federal claims (only). Interland makes a simple argument: MMS Truckline and Grand Mallett have not shown that they suffered actual

damages from the alleged violations of the TLA. And without actual damages, the claims must come to a screeching halt.

For the reasons stated below, the motion for partial summary judgment is granted in part, and denied in part.

## Background

Kendria Stewart and Sherdell Mallett drive trucks. *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶¶ 53–54 (Dckt. No. 57).

Stewart and Mallett each own a business. Stewart owns MMS Truckline LLC. *See* Def.'s Statement of Facts, at ¶ 7 (Dckt. No. 46-2). Mallett owns Grand Mallett Corporation. *Id.* at ¶ 10.

In 2022, Stewart and Mallett started going the distance for Interland, an interstate-trucking company. *Id.* at ¶¶ 1, 8, 11. Interland is a motor carrier. *Id.* at ¶ 1.

The political branches have paved the rules of the road for the relationship between carriers (like Interland) and owner-operators (like Stewart and Mallett). Owner-operators "drive for the carriers they choose." *See Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 662 (7th Cir. 2022). Sometimes they own a big-rig, and sometimes they lease one. *Id.* Either way, the relationship between the owner-operator and the carrier is memorialized in a lease agreement.[1] *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 58 (Dckt. No. 57); *see also* 49 C.F.R. § 376.11(a) ("There shall be a written lease granting the use of the equipment[.]").

Carriers and owner-operators need each other. But they haven't always gotten along. In the 1970s, tensions between the two groups culminated in a nationwide strike. *See Carter v. Paschall Truck Lines, Inc.*, 2023 WL 359559, at *3 (W.D. Ky. 2023). After a "winter of

---

[1] The document is (somewhat confusingly) called a lease agreement even when an owner-operator owns his own truck and therefore isn't leasing anything from the motor carrier.

discontent," the Interstate Commerce Commission promulgated the Truth in Leasing regulations. *Id.* (citation omitted). "The regulations were designed to promote a full disclosure between the carrier and the owner-operator." *Id.* (cleaned up). No secrets between friends.

In a nutshell, the federal regulations try to get the carrier and the driver on the same page, literally and figuratively. For example, the lease must "clearly state[]" how much the carrier will pay for the driver's "equipment" and "services." *See* 49 C.F.R. § 376.12(d). The lease also must list things that the carrier will "deduct[]" from the driver's "compensation." *Id.* at § 376.12(h).

Similarly, the Illinois Wage Protection Collection Act prohibits employers from making deductions from wages without the employee's written consent. *See* 820 ILCS 115/9. For example, a carrier can't dock a driver's paycheck for gas money, unless the lease put the charge-back deduction on the table.

Interland required its drivers to have their own corporations. *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 4 (Dckt. No. 57). Sometimes drivers do not already have their own corporations. In that situation, Interland pays the fees to set up the new corporations, and later deducts the fees from the drivers' pay. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 67 (Dckt. No. 60).

Stewart and Mallett signed "Lease Agreement[s]" with Interland "under their corporate entities." *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶¶ 8, 11 (Dckt. No. 57). In other words, Interland signed an agreement with MMS Truckline (Stewart's company), and signed a separate agreement with Grand Mallett (Mallett's company). *Id.*

Under the agreements, the corporate entities needed to maintain a $1,500.00 escrow fund with Interland. *Id.* ¶ 14. The agreements authorized Interland to deduct $150.00 per week until the $1,500.00 escrow fund was reached. *Id.*

3

With contracts in hand, Stewart and Mallett got behind the wheel and hit the open road. Stewart didn't stick around for long. Stewart drove for Interland for only two weeks in the latter half of July 2022. *See* Pls.' Resp. to Def.'s Statement of Facts, at ¶ 53 (Dckt. No. 57).

Mallett kept trucking longer. He drove for about a year, from March 2022 to April 2023. *Id.* at ¶ 54.

Interland made deductions from their pay. Three types of deductions are at issue for Stewart. One type of deduction is at issue for Mallett.

Interland deducted $150 from Stewart's pay for an orientation fee. *See* Stewart Statement (Dckt. No. 46-12). Interland also deducted $80 from Stewart's pay for drug testing. *Id.* Finally, Interland deducted $389.59 from her pay for travel expenses, including $30 for luggage, $241.60 for a flight, and $117.99 for "Lyft/Uber." *Id.*; *see also* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶¶ 63–64 (Dckt. No. 60).

Interland deducted $150 from Mallett's pay for a corporation fee. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 66 (Dckt. No. 60).

Stewart and Mallett weren't happy with the deductions. They also believed that the company shorted them on the interest for the money in escrow, too.

Stewart, Mallett, and their two companies responded by filing a putative class action against Interland. The complaint brings two counts.

The two companies brought the first claim. MMS Truckline and Grand Mallett allege that Interland violated the regulations under the Truth in Leasing Act. They claim that Interland made deductions for expenses that were not disclosed in the leases. They also claim that Interland failed to pay interest on the escrow money. *See* Second Am. Cplt., at ¶¶ 61–66 (Dckt. No. 18).

The two individuals brought the second claim. Stewart and Mallett bring claims under the Illinois Wage Payment and Collection Act. *Id.* at ¶¶ 67–74.

Interland moved for summary judgment on one of the two claims. Interland seeks summary judgment only on the claim by the companies, meaning the claim under the Truth in Leasing Act. *See generally* Mtn. for Partial Summ. J. (Dckt. No. 46-1).

Interland argues that "Plaintiffs[] have no evidence that they suffered any actual damages caused by the alleged regulatory violations." *Id.* at 2. Interland admits that it did not pay the interest owed to the companies, but it argues that "Plaintiffs' damages for the non-payment of interest on the escrow funds are *de minimis*" and therefore cannot "survive summary judgment." *Id.* at 12.

After reading the briefs, this Court had a few questions about the deductions and the disclosures. So it issued an order and directed the parties to provide some answers. *See* 2/25/25 Order (Dckt. No. 63). The parties complied, and provided helpful information. *See* Pls.' Suppl. Statement (Dckt. No. 64); Def.'s Suppl. Statement (Dckt. No. 65).

The parties confirmed that Interland made deductions from Stewart's pay for an orientation fee, travel expenses, and a drug-testing fee. The company did not make those deductions from Mallett's pay, because he worked longer than three months.[2] *See* Pls.' Suppl. Statement, at 2 (Dckt. No. 64) ("Interland did not deduct money from Mallett's pay for orientation fee, travel expenses, or drug testing. It only deducted money from Stewarts' [sic] pay for those three items.").

---

[2] Interland has a policy of making certain deductions when a driver works for less than three months. And that's what happened here. Again, Stewart drove for only two weeks, and Mallett drove for roughly one year. Interland deducted an orientation fee, travel expenses, and a drug-testing fee from Stewart's pay, because Stewart worked less than three months. But Interland did not make those deductions from Mallett's pay, because he drove more than three months.

5

The parties also confirmed that Interland made a deduction from Mallett's pay for a corporation fee. But Interland didn't make that deduction from Stewart's pay. *Id.* ("Interland only made the corporation fee deduction from Mallett's pay.").

So, Interland deducted an orientation fee, travel expenses, and a drug-testing fee from Stewart's pay, but not from Mallett's pay. And on the flipside, Interland deducted a corporation fee from Mallett's pay, but not Stewart's pay.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could

return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

The only claim at issue is the claim by the companies owned by Stewart and Mallett, meaning MMS Truckline and Grand Mallett. For the sake of simplicity, the Court will refer to those two companies as Stewart and Mallett.

Stewart and Mallett allege that Interland violated the regulations under the Truth in Leasing Act in two ways. First, they allege that Interland made deductions that it did not disclose in the lease. *See* Second Am. Cplt., at ¶ 65 (Dckt. No. 18). Second, they allege that Interland failed to pay them interest on the money in escrow. *Id.* at ¶ 63.

## I. Disclosure of Deductions

The first issue is whether Interland made deductions that violated the regulations under the Truth in Leasing Act. Two provisions loom large, and work in tandem.

The first provision is about the contents of the lease. That provision requires the lease to "clearly" specify all deductions, meaning amounts paid in advance by the carrier and then charged to the owner-operator.

"The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." *See* 49 C.F.R. § 376.12(h). The lessor is entitled to copies of documents to determine the validity of the charge, too. *Id.*

The second provision is about compliance with the lease generally. The opening paragraph of the regulation says that the "required lease provisions shall be adhered to and performed by the authorized carrier." *See* 49 C.F.R. § 376.12.

Here, the claim welds those two provisions together. As the companies see things, the regulations required Interland to disclose in the lease any deductions that it would make. *See* 49 C.F.R. § 376.12(h). Interland then made deductions that were not disclosed in the lease. So Interland did not "adhere[]" to the lease. *See* 49 C.F.R. § 376.12. That is, the companies allege that Interland violated the regulations by charging various deductions that it failed to disclose in the lease.

Plaintiffs take issue with the lack of disclosure in the lease for four deductions: (1) orientation fees, (2) travel expenses, (3) drug-testing expenses, and (4) corporation fees. *See* Pls.' Resp., at 5–6 (Dckt. No. 56).[3]

There isn't much room for debate on the deduction for corporation fees. Interland deducted $150 from Mallett's pay for the corporation fee. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 66 (Dckt. No. 60).

The regulations required the lease to disclose any deductions for charge-backs. *See* 49 C.F.R. § 376.12(h). The lease did not disclose the deduction for corporation fees, a type of charge-back. No other document disclosed that deduction, either. And Mallett suffered actual damages because he lost $150.

---

[3] Other deductions are off the table. Plaintiffs agree that Interland "properly disclosed chargebacks for occupational accident insurance deductions, driver's legal plan deductions, cash advances, and property damage deductions." *See* Pls.' Resp., at 5 (Dckt. No. 56).

Mallett has done enough to get to a jury. He established that the regulations required the disclosure of a deduction. Interland made a deduction without making any disclosure about corporation fees. And in the end, Mallett's pocketbook was $150 lighter.

The issue is more complicated when it comes to Stewart. Again, Interland didn't make a deduction from Stewart's pay for a corporation fee. But Interland did make deductions for orientation fees, travel expenses, and drug-testing fees.

The parties agree that the lease did not disclose any of those deductions. As Interland admitted: "Interland disclosed that there would be deductions for orientation fees, travel expenses, and drug testing expenses should a driver leave Interland within three months of hire. This disclosure was made in Section 8 of the Comprehensive Progressive Disciplinary Program signed by each driver with each page of the document also initialed. These deductions were not disclosed in any other document." *See* Def.'s Suppl. Statement, at 1 (Dckt. No. 65).

Again, the lack of disclosure is a potential problem, because the regulations required disclosure of any deductions in the lease. *See* 49 C.F.R. § 376.12(h).

But there's a wrinkle. Interland did, in fact, disclose the deductions, albeit in another document. On June 20, 2022, Stewart signed a form titled Comprehensive Progressive Disciplinary Program. *See* Stewart Comprehensive Progressive Disciplinary Program (Dckt. No. 46-11).

Putting that date in perspective, Stewart signed the lease a few weeks later, on July 12, 2022. *See* MMS Truckline Lease (Dckt. No. 46-6). And she drove for the company during a two-week period starting on July 18, 2022, meaning a week after signing the lease. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 77 (Dckt. No. 60). So she signed the form

titled Comprehensive Progressive Disciplinary Program about one month before she started hauling.

In that form, Stewart acknowledged that Interland could make deductions for various items. The form began with an overarching explanation that the company could take corrective action for a failure to comply with company policy. "The Primary Corrective Action Policy may impose the following corrective action on the driver for his/her failure to comply with 'Company' and/or federal requirements, as follows." *See* Stewart Comprehensive Progressive Disciplinary Program (Dckt. No. 46-11).

The list included a section titled "Other." *Id.* at § 8. The list included an orientation fee, travel expenses, and drug-test expenses.

The form disclosed a $150 orientation fee if the driver left the company within three months. "Orientation fee is charged if driver leave the company within 3 months – $150 monetary charge." *Id.*

The form disclosed that the company would charge travel expenses, too, presumably meaning travel for orientation. "Travel expenses are charged if driver leaves the company within 3 months." *Id.*

The form also disclosed a fee for drug testing. "Drug Test expenses are charged if driver leaves the company within 3 months." *Id.*

Stewart placed her initials at the bottom of the page. *Id.* She also signed the form on the last page. *Id.* at 6.

Interland believes that the form about the Comprehensive Progressive Disciplinary Program solves any problem when it comes to a lack of disclosure. Interland acknowledges that the lease did not disclose any deductions for orientation fees, travel expenses, and drug testing.

10

But the Comprehensive Progressive Disciplinary Program form *did* disclose those deductions. As Interland sees things, it's no harm, no foul.

Interland argues that Stewart cannot bring a claim because she suffered no harm. The lack of disclosure in the lease didn't harm her, the argument goes, because the deductions were disclosed in another document. In effect, maybe her right hand didn't have a document with the disclosure, but her left hand did.

The Seventh Circuit has not decided whether a claim under the Truth in Leasing Act requires a showing of actual harm. *See Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *4 (N.D. Ill. 2022) (noting that "the Seventh Circuit has not squarely addressed the issue" whether the TLA requires a showing of actual damages). But based on the statutory text, it is hard to avoid that conclusion.

A carrier "is liable for damages sustained by a person as a result of an act or omission of that carrier[]." *See* 49 U.S.C. § 14704(a)(2). The Court gives those words their ordinary meaning. *See* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) ("Words are to be understood in their ordinary, everyday meanings.").

The word "sustained" says a lot. The person bringing the claim must have "sustained" damages. *See* 49 U.S.C. § 14704(a)(2). The word "sustain" means "[t]o undergo; suffer." *See Sustained*, Black's Law Dictionary (11th ed. 2019). A person sustains damages if she suffers actual damages. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar System, Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (contrasting "sustained" damages with "statutory or presumed damages").

11

Common parlance supports this natural reading. Imagine if your clumsy friend dropped a bowling ball by your foot. And imagine if your friend asked if your toe sustained any damage. If you lucked out, and the bowling ball missed you completely, you probably wouldn't say "yes."

Other district courts in the Seventh Circuit have recognized that the TLA requires a showing of actual damages. *See, e.g.*, *Niiranen*, 2022 WL 103722, at *5 (requiring actual damages, and reasoning that "[r]equiring actual damages is consistent with the language of § 14704(a)(2)"); *Derolf v. Risinger Bros. Transfer, Inc.*, 295 F. Supp. 3d 876, 886 (C.D. Ill. 2017) (dismissing claims because the "[p]laintiffs do not plead that they have suffered any actual damages from the alleged TLA violations") (cleaned up).

Courts in other jurisdictions have reached the same conclusion. *See Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 617 (9th Cir. 2008) ("[A] plaintiff must allege actual damages arising from the violation [of § 14704(a)(2)] in order to state a claim."); *Landstar Sys.*, 622 F.3d at 1325 ("[T]he District Court correctly concluded that [the plaintiffs] have to prove actual damages."); *Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 912 (W.D. Ky. 2018) (similar). By the look of things, the majority view is that the Truth in Leasing Act requires actual damages. *See Niiranen*, 2022 WL 103722, at *5 ("[T]he majority of courts that have considered [the question] have reached the conclusion that § 14704(a)(2) requires evidence of actual damages.") (citation omitted).

The statute requires a showing of actual damages. So the question boils down to whether Stewart suffered actual damages from the lack of disclosure in the lease, given that a disclosure appeared in the form about the Comprehensive Progressive Disciplinary Program.

Stewart suffered no harm when it came to the orientation fee. The form disclosed that Stewart would have to pay $150 as an orientation fee if she lasted less than three months.

"Orientation fee is charged if driver leave the company within 3 months – $150 monetary charge." *See* Stewart Comprehensive Progressive Disciplinary Program (Dckt. No. 46-11).

Stewart left the company after only two weeks, and the company charged her $150 as an orientation fee. So Stewart suffered no actual damage from the lack of disclosure in the lease. Stewart lost exactly what the company disclosed that she would lose.

Stewart didn't suffer any harm when it came to the travel expenses, either. The Comprehensive Progressive Disciplinary Program form disclosed that she would have to pay travel expenses. "Travel expenses are charged if driver leaves the company within 3 months." *Id.*

True, the form did not pin down precisely what "travel expenses" meant. But a related form sheds some light. On June 6, 2022, Stewart signed a Deduction Authorization Form. *See* Stewart Deduction Authorization Form (Dckt. No. 46-9). She signed that form during orientation. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 62 (Dckt. No. 60).

The form acknowledged that the company could make deductions for certain expenses. "I, Kendria Stewart understand and agree that Interland Inc., may deduct money from my payroll statement [sic] the following." *See* Stewart Deduction Authorization Form (Dckt. No. 46-9). The list included travel expenses: "Other (UBER, Flight, Hotel)."[4] *Id.*

---

[4] The form also included some handwritten details, such as $80 for the drug test, and so on. The handwritten material does not advance Interland's cause. A company representative added that handwritten material after Stewart left the company. *See* Def.'s Reply to Pls.' Statement of Additional Facts, at ¶ 63 (Dckt. No. 60) ("After Stewart terminated her relationship with Interland prior to 3 months, the amount of these deductions were written onto the Deduction Authorization Form by an Interland official."). So, the handwritten material was not disclosed to Stewart before the company made the deductions.

Interland made deductions for travel expenses that were consistent with those disclosures. Interland deducted $389.59 for travel expenses, including $30 for luggage, $241.60 for a flight, and $117.99 for "Lyft/Uber." *Id.*

The deductions for travel expenses were not out of line with the type of deductions that the company disclosed beforehand. And there is nothing remarkable about those deductions, either. The company made a deduction for a flight (a ticket plus a luggage fee) and for ground transportation. That's pretty plain vanilla.

The company disclosed that it would make a deduction for travel expenses, and then the company made a deduction for run-of-the-mill travel expenses. If Stewart suffered any actual harm from the lack of disclosure in the lease, it is hard to see what that harm is.

The question is closer when it comes to the deduction for drug testing. The form did disclose that the company would make a deduction for drug-testing expenses. "Drug Test expenses are charged if driver leaves the company within 3 months." *See* Stewart Comprehensive Progressive Disciplinary Program (Dckt. No. 46-11).

But the cost of drug testing isn't as easy to predict as, say, the cost of travel expenses. For travel expenses, a person might not know what the price of an airplane ticket will be. But it's not hard to figure out that the price of the ticket – whatever it is – is a travel expense. Most people can envision travel expenses. But drug-testing fees? The method of calculation is up in the air.

The lack of predictability is a problem. The regulations require disclosure, and the disclosure must include how the company will calculate the deduction. "The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, *together with a recitation*

14

*as to how the amount of each item is to be computed*." *See* 49 C.F.R. § 376.12(h) (emphasis added).

Here, Interland did not give Stewart any idea how it would calculate the deduction for drug testing. That disclosure didn't exist in the lease, or in the Comprehensive Progressive Disciplinary Program form, or in the Deduction Authorization Form.

Putting it all together, Interland did disclose that it would make a deduction for drug testing if Stewart worked for less than three months. But the company didn't explain how it would calculate that fee. Interland later deducted $80 from Stewart's pay for drug-testing expenses. That's enough for a claim.

In sum, the Court grants Interland's motion for summary judgment on Count I to the extent that it covers the deductions for the orientation fee and for travel expenses. The Court denies the motion for summary judgment to the extent that it covers the deductions for the corporation fee and for the drug-testing expenses.

## II.     Interest Payments

The other part of the claim is about interest payments.

The companies allege that Interland did not pay them interest on the money held in escrow. *See* Second Am. Cplt., at ¶ 47 (Dckt. No. 18). The regulations under the Truth in Leasing Act require the payment of interest. *See* 49 C.F.R. § 376.12(k)(5) ("If escrow funds are required, the lease shall specify . . . [t]hat while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis.").

Interland admits that it didn't pay interest on the escrow funds. *See* Mtn. for Summ. J., at 10 (Dckt. No. 46-1). But Interland argues that the damages for this violation are *de minimis*. *Id.* In other words, the damages are too small to survive summary judgment.

Interland says that it owes interest payments of $12.60 to Mallett's company, and $8.58 to Stewart's company. *Id.* at 11.

Stewart and Mallett take issue with Interland's calculations. They argue that Interland owes $48.21 to Mallett's company, and $8.42 to Stewart's company. *See* Pls.' Resp., at 9 (Dckt. No. 56).

There isn't much difference between the calculations. The highest number isn't a very high number, either. The amount at stake is a small fraction of the billing rate of whoever is reading this opinion.

Overall, there isn't much at stake. But something is at stake. The amount of interest probably won't break the bank, but it is enough to get into federal court.

### Conclusion

For the foregoing reasons, Defendant Interland's motion for partial summary judgment is granted in part, and denied in part. The Court grants summary judgment for Interland on Count I to the extent that it covers the deductions for the orientation fee and for travel expenses. The motion is otherwise denied.


Date:   March 7, 2025

_____
Steven C. Seeger
United States District Judge